**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CHEE WAR, as Administrator of the Estate of Nyah Mway,**

**Plaintiff,**

**v.** **6:25-CV-824 (FJS/CBF)**

**CITY OF UTICA and OFFICER PATRICK HUSNAY,**

**Defendants.**

---

**APPEARANCES** **OF COUNSEL**

**EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP**
One Rockefeller Plaza, 8th Floor
New York, New York 10020
Attorneys for Plaintiff
**EARL WARD, ESQ.**
**HAFSA S. MANSOOR, ESQ.**
**JULIA P. KUAN, ESQ.**

**CAMBARERI & BRENNECK**
300 South State Street, 1st Floor
Syracuse, New York 13202
Attorneys for Plaintiff
**MELISSA SWARTZ-BRAGG, ESQ.**

**FOTI HENRY PLLC**
403 Main Street - Suite 225
Buffalo, New York 14203
Attorneys for Defendants
**DANIEL CARTWRIGHT, ESQ.**
**DAVID H. WALSH, IV, ESQ.**

**SCULLIN, Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Pending before the Court is Defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 10. Plaintiff opposes the motion. *See* Dkt. No. 13.

## II. BACKGROUND

On June 25, 2025, Plaintiff Chee War, in her capacity as the Administrator of the Estate of her son Nyah Mway, filed her complaint against Defendants City of Utica and Officer Patrick Husnay. *See* Dkt. No. 1, Complaint. In her complaint, Plaintiff alleges that, on the evening of June 28, 2024, while walking on Shaw Street in Utica, New York, her son Nyah Mway, who was 13 years old at the time, was stopped by three uniformed Utica Police officers for jaywalking and insisted on searching him. *See id.* at ¶ 1. Plaintiff alleges that, as an immigrant who had fled with his family from a military regime in Burma, Nyah, fearing these armed uniformed police officers, began running down the street. *See id.* at ¶ 2. "[W]hile running after Nyah, Officer Patterson yelled 'Gun!' after seeing a black pellet gun in Nyah's hand." *See id.* at ¶ 38. Plaintiff asserts that, "[w]ithin ten seconds of chasing Nyah, Officer Bryce Patterson grabbed Nyah, threw him to the ground, and repeatedly punched Nyah about the face and body while having him pinned to the ground." *See id.* at ¶¶ 3, 41. Finally, Plaintiff contends that, "[w]hile Officer Patterson was still on top of Nyah punching him, Defendant Officer Patrick Husnay walked over and shot Nyah point-blank in the chest, [penetrating his heart and lung] - killing him." *See id.* at ¶¶ 4, 43. Finally, Plaintiff contends that, "after firing the shot that killed Nyah, . . ., Defendant Husnay recovered the pellet gun in a grassy area several feet from where Nyah laid [sic] bleeding out from the gunshot wound." *See id.* at ¶ 44.

Plaintiff asserts the following causes of action against Defendants:

> (1) First Cause of Action - Excessive Force pursuant to 42 U.S.C. § 1983, Fourth and Fourteenth Amendments to the U.S. Constitution against Defendant Husnay. *See* Complaint at ¶¶ 48-52

> (2) Second Cause of Action - Excessive Force under the N.Y. State Constitution, Art. I, § 21, against both Defendants. *See* Complaint at ¶¶ 53-58
>
> (3) Third Cause of Action - Common Law Battery against both Defendants. *See* Complaint at ¶¶ 59-62
>
> (4) Fourth Cause of Action - Common Law Assault against both Defendants. *See* Complaint at ¶¶ 63-66
>
> (5) Fifth Cause of Action - Reckless Hiring, Training, Supervision, Discipline, Staffing, and Retention against Defendant City of Utica. *See* Complaint at ¶¶ 67-71

*See, generally,* Complaint.

Based on the allegations in her complaint, Plaintiff seeks the following relief: (1) an award of compensatory damages to "fully compensate Plaintiff for the loss of rights, physical injuries, pain and suffering, hedonic damages, and emotional distress suffered due to Defendants' unlawful conduct; (2) an award of punitive damages; and (3) an award of attorney's fees, costs and expenses incurred in prosecuting this action under 42 U.S.C. § 1988. *See* Complaint at WHEREFORE Clause.

## III. DISCUSSION[1]

### A. Preliminary matters

In response to Defendants' concerns regarding Plaintiff's official capacity claims and her request for punitive damages, Plaintiff has clarified that she is only suing Defendant Husnay in his individual capacity and is only seeking punitive damages against Defendant Husnay. Given these clarifications, the Court need not address these arguments.

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing System generates and are located in the top right corner of those pages.

**B. Standard of review**

"A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a party's claim for relief." *United States of America v. Bd. of Elections of the State of New York*, No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921, *7 (N.D.N.Y. July 10, 2026) (citing *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted)). "In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor." *Id.* (citing *ATSI Commc'ns, Inc. v. Shar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted)). "To survive a motion to dismiss, a party need only plead 'a short and plain statement of the claim,' *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual 'heft to "sho[w] that the pleader is entitled to relief[.]"'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted)). "Under this standard, the pleading's '[f]actual allegations must be enough to raise a right [to] relief above the speculative level,' *see id.* at 555 (citation omitted), and present claims that are 'plausible on [their] face,' *id.* at 570." *Id.* at 7.

"'The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678 (citation omitted)). "'Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Ultimately, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief,' *Twombly*, 550 U.S. at 558, or where a plaintiff has 'not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed.'" *Id.* (quoting [*Twombly*, 550 U.S.] at 570).

Finally, when deciding a motion to dismiss, "the court may consider 'documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken[.]'" *Id.* (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citing *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999)) (other citation omitted)). "'To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents. . . . [and] [t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.'" *Benny v. City of Long Beach*, No. 20-CV-1908 (KAM), 2021 WL 4340789, *10 (E.D.N.Y. Sept. 23, 2021) (quoting *Walia v. Napolitano*, No. CV112512(SJF)(SIL), 2017 WL 10378189, at *9 (E.D.N.Y. Dec. 4, 2017) (quoting *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011)) (quoting *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks, citations, and alterations omitted))).

**C. Plaintiff's excessive force claim against Defendant Husnay**

"Every person has a Fourth Amendment right to be free from excessive force by police officers, including during the course of an arrest." *Jackson v. Cty. of Ulster*, No. 1:22-cv-148 (TJM/ATB), 2022 U.S. Dist. LEXIS 132123, *5 (N.D.N.Y. July 26, 2022) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). "To succeed on a Fourth Amendment claim, a plaintiff must demonstrate that the actions of the defendant officer were not '"objectively reasonable" in light of the facts and circumstances as presented to [the officer] at the time of the plaintiff[']s arrest.'" *Id.* (quoting [*Graham v. Connor*, 490 U.S.] at 397). "Application of physical force is excessive when it is more than necessary under the

circumstances." *Brown v. City of New York*, No. 11 Civ. 1068 (AJN), 2013 U.S. Dist. LEXIS 17483, *26 (S.D.N.Y. Feb. 8, 2013) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003)).

"Whether an officer's actions were reasonable depends on a fact-intensive inquiry which takes account of 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Jackson*, 2022 U.S. Dist. LEXIS 132123, at *5 (quoting [*Graham*, 490 U.S.] at 396-97). "'[T]he factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time.'" *Merone v. City of New York*, No. 24-cv-8730 (BMC), 2025 U.S. Dist. LEXIS 233907, *6 (E.D.N.Y. Dec. 1, 2025) (quoting [*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)] (citing *Graham*, 490 U.S. at 397)).

"[C]ourts are rarely able to assess the reasonableness of the force used at the motion to dismiss stage." *Hester-Bey v. Ford*, No. 13-CV-4656 (CBA) (LB), 2015 U.S. Dist. LEXIS 107836, *7 (E.D.N.Y. Aug. 13, 2015). "Indeed, a motion to dismiss may be granted in an excessive force case only if, after accepting all allegations as true, the force used was objectively reasonable as a matter of law." *Id.* (citing *Pelt v. City of New York*, No. 11-CV-5633 (KAM) (CLP), 2013 U.S. Dist. LEXIS 122848, 2013 WL 4647500, at *13 (E.D.N.Y. Aug. 28, 2013) (granting motion to dismiss an excessive force claim where plaintiff alleged only that officers made verbal threats because such allegations are insufficient as a matter of law)) (other citation omitted). Where a complaint alleges that an officer exerted actual physical force against a plaintiff, courts have found that the question of whether the force used was reasonable and

justified or not, "is simply not a question that the Court can resolve at [the motion to dismiss] stage[.]" *Id.* at *7.

In the present case, Plaintiff claims that, "Officer Patterson was on top of Nyah, using his body and left arm to pin him down on the ground, while forcefully punching Nyah in the face with his right fist[,] Nyah, being only 5'5" and 111 pounds, was completely restrained and inert." *See* Dkt. No. 1, Complaint, at ¶ 41. Furthermore, according to Plaintiff, "[l]ess than a second later, at 10:19:03 PM, Defendant Husnay ran up to where Officer Patterson was on top of Nyah [and] [t]hree seconds later, at 10:19:06 PM, while Officer Patterson was still on top of Nyah punching him, Defendant Husnay without cause or justification fired a single bullet into Nyah's left chest, penetrating his heart and lung -- killing him." *See id.* at ¶¶ 42-43. Finally, "[t]wenty seconds after firing the shot that killed Nyah, at 10:19:26 PM, Defendant Husnay recovered the pellet gun in a grassy area several feet from where Nyah laid bleeding out from the gunshot wound." *See id.* at ¶ 44.

In support of their motion to dismiss, Defendants "seek to introduce body worn cam ("BWC") footage for consideration of this motion." *See* Dkt. No. 10-1, Defendants' Memorandum of Law, at 8 (citing Exhibits C-E). They argue, based on *Manzi v. Goldfine*, No. 23-CV-05176 (PMH), 2024 WL 2943876, *4 (S.D.N.Y. June 10, 2024), that "consideration of BWC footage is appropriate as Plaintiff's complaint clearly relies on it to frame the[] complaint." *See id.* at 9 (citation omitted). Specifically, Defendants contend that "Plaintiff[']s complaint alleges facts down to the second they allegedly occurred, with a degree of specificity that would be impossible without the benefit of time-stamped BWC footage." *See generally id.* Moreover, Defendants argue that, "[i]n advance of commencing this action, Plaintiff[']s counsel[] requested -- and [was] furnished -- the BWC footage from the City pursuant to the Freedom of Information

Act ("FOIL"), which confirms that [Plaintiff's counsel] possessed the material." *See id.* (citing Exhibits A-B). Defendants contend that, "[n]ot only did Plaintiff[']s counsel receive the BWC footage prior to commencement of the action, it is publicly available online, thus further establishing that Plaintiff[] had access to -- and relied on -- the BWC footage in framing [the] complaint." *See id.* "Therefore, in accordance with *Manzi*, 2024 WL 2943876," Defendants assert that the Court should consider the BWC footage in deciding this motion. *See id.*

In response to Defendants' position, Plaintiff argues that Defendants' "entire 12(b)(6) motion hinges on a request that the Court engage in fact-finding in direct contravention of unambiguous Supreme Court and Second Circuit precedent forbidding it when there are disputed issues of fact." *See* Dkt. No. 13, Plaintiff's Memorandum of Law, at 5. Specifically, Plaintiff asserts that "Defendants ask that, based on dark, nighttime, redacted, and blurry body-worn camera footage, the Court 'conclusively' find that thirteen-year-old Nyah Mway was pointing a lethal weapon at police officers when Defendant Officer Husnay shot him at point blank range -- notwithstanding express allegations in Plaintiff's complaint that Nyah was pinned to the ground, completely restrained by Officer Patterson and inert, when Officer Husnay shot him." *See id.*

Even if the Court were to conclude that the BWC footage was incorporated into the complaint and that, therefore, the Court could consider that footage in deciding Plaintiff's motion to dismiss, that would not, necessarily, result in a decision in Defendants' favor. First, it appears that the BWC footage on which Defendants rely to support their motion is a redacted version of that footage. Furthermore, the Court's cursory review of that footage and the parties' arguments about what that footage does and does not show indicate that there are undeniably issues of fact, which the Court cannot resolve at this juncture of the litigation. Therefore, for purposes of

deciding Defendants' motion to dismiss, the Court will accept, as true, the well-pleaded factual allegations in Plaintiff's complaint.

**D. Plaintiff's Fourth Amendment excessive force claim against Defendant Husnay**

"Every person has a Fourth Amendment right to be free from excessive force by police officers, including during the course of an arrest." *Jackson v. Cty. of Ulster*, No. 1:22-cv-148 (TJM/ATB), 2022 U.S. Dist. LEXIS 132123, *5 (N.D.N.Y. July 26, 2022) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). "To succeed on a Fourth Amendment claim, a plaintiff must demonstrate that the actions of the defendant officer were not '"objectively reasonable" in light of the facts and circumstances as presented to [the officer] at the time of the plaintiff[']s arrest.'" *Id.* (quoting [*Graham*, 490 U.S.] at 397). "Application of physical force is excessive when it is more than is necessary under the circumstances." *Brown v. City of New York*, No. 11 Civ. 1068 (AJN), 2013 U.S. Dist. LEXIS 17483, *26 (S.D.N.Y. Feb. 8, 2013) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003)).

"Whether an officer's actions were reasonable depends on a fact-intensive inquiry which takes account of 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Jackson*, 2022 U.S. Dist. LEXIS 132123, at *5 (quoting [*Graham*, 490 U.S.] at 396-97). "'[T]he factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time.'" *Merone v. City of New York*, No. 24-cv-8730 (BMC), 2025 U.S. Dist. LEXIS 233907, *6 (E.D.N.Y. Dec. 1,

2025) (quoting [*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)] (citing *Graham*, 490 U.S. at 397)).

"[C]ourts are rarely able to assess the reasonableness of the force used at the motion to dismiss stage." *Hester-Bey v. Ford*, No. 13-CV-4656 (CBA) (LB), 2015 U.S. Dist. LEXIS 107836, *7 (E.D.N.Y. Aug. 13, 2015). "Indeed, a motion to dismiss may be granted in an excessive force case only if, after accepting all allegations as true, the force used was objectively reasonable as a matter of law." *Id.* (citing *Pelt v. City of New York*, No. 11-CV-5633 (KAM) (CLP), 2013 U.S. Dist. LEXIS 122848, 2013 WL 4647500, at *13 (E.D.N.Y. Aug. 28, 2013) (granting motion to dismiss an excessive force claim where plaintiff alleged only that officers made verbal threats because such allegations are insufficient as a matter of law)) (other citation omitted). Where a complaint alleges that an officer did exert actual physical force against a plaintiff, the question of whether that force was reasonable and justified under the circumstances "is simply not a question that the Court can resolve at [the motion to dismiss] stage." *Id.*

In her complaint, Plaintiff acknowledges that, when Officer Patterson told Nyah that he was going to pat him down to make sure he had no weapons on him, "Nyah began running down the street away from the police." *See* Dkt. No. 1, Complaint, at ¶ 35. Plaintiff also acknowledges that, "while running after Nyah, Officer Patterson yelled 'Gun!' after seeing a black pellet gun in Nyah's hand." *See id.* at ¶ 38. However, Plaintiff alleges that "Nyah ran less than a block before falling in the roadway [and] tried to get back up, but, . . ., Officer Patterson tackled Nyah onto the sidewalk." *See id.* at ¶¶ 39-40.

What Plaintiff alleges happened next is the reason the Court cannot dismiss Plaintiff's complaint at this stage of the litigation. According to Plaintiff's complaint, "Officer Patterson was on top of Nyah, using his body and left arm to pin him down to the ground, while forcefully

punching Nyah in the face with his right fist. Nyah, being only 5' 5" and 111 pounds, was completely restrained and inert." *See id.* at ¶ 41. "Less than a second later, . . . Defendant Husnay ran up to where Officer Patterson was on top of Nyah." *See id.* at ¶ 42. "Three seconds later, . . ., while Officer Patterson was still on top of Nyah punching him, Defendant Husnay without cause or justification fired a single bullet into Nyah's left chest, penetrating his heart and lung -- killing him." *See id.* at ¶ 43. "Twenty seconds after firing the shot that killed Nyah, . . . Defendant Husnay recovered the pellet gun in a grassy area several feet from where Nyah laid [sic] bleeding out from the gunshot would." *See id.* at ¶ 44.

Obviously, Defendants disagree with Plaintiff's version of the "facts," but, as noted, at this stage of the litigation, the Court must accept Plaintiff's well-pleaded allegations as true. Doing so, the Court cannot conclude, as a matter of law, that Defendant Husnay did not use excessive force when he shot and killed Nyah while Nyah was lying on the ground with Officer Patterson on top of him, pinning him down and punching him in the face. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's excessive force claim against Defendant Husnay.

**E. Qualified immunity**

"'The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to

trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (emphasis deleted)). To determine whether qualified immunity is appropriate, courts first look to "whether 'the facts alleged show the officer's conduct violated a constitutional right[.]'" *Id.* at 232 (quoting [*Saucier v. Katz*,] 533 U.S. [194,] 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 ). "Only after completing this first step, . . ., may a court turn to 'the next, sequential step,' namely, 'whether the right was clearly established.'" *Id.* (citation omitted). "[A] motion to dismiss based on qualified immunity 'will only be granted if the complaint fails to allege the violation of a clearly established right.'" *Sales v. Barizone*, No. 03 Civ. 6691 (RJH), 2004 U.S. Dist. LEXIS 24366, *54-*55 (S.D.N.Y. Nov. 29, 2004) (quoting *Williams v. Fisher*, 2003 U.S. Dist. LEXIS 16442, No. 02 Civ. 4558, 2003 WL 22170610, at *10 (S.D.N.Y. Sept. 18, 2003) (citing cases)).

"On a Rule 12(b)(6) motion, . . ., 'the facts supporting the defense [of qualified immunity] [must] appear on the face of the complaint.'" *Atkinson v. City of Newburgh*, No. 24-cv-6724 (NSR), 2026 WL 1865119, *9 (S.D.N.Y. June 29, 2026) (quoting [*Lamzot v. Phillips*, No. 04-CV-6719 (LAK), 20026 WL 686578, *8 (S.D.N.Y. Mar. 16, 2006)] (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998))). Therefore, "dismissal on qualified immunity grounds is appropriate only where the defendants' entitlement to the defense is established as a matter of law." *Id.* (citation omitted).

According to Plaintiff, Defendant Officer Husnay fired a single bullet into Nyah's left chest, penetrating this heart and lung -- killing him while Officer Patterson "was on top of Nyah, using his body and left arm to pin him down on the ground, while forcefully punching Nyah in the face with his right fist." *See* Complaint at ¶¶ 41-43. Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude from the face of

the Complaint that Defendant Officer Husnay's alleged use of force was objectively reasonable as a matter of law. Nor can the Court conclude, at this stage, that Defendant Officer Husnay is entitled to qualified immunity. Viewing the allegations in the light most favorable to Plaintiff, a reasonable officer would have understood that firing a shot at an individual, who was lying on his back on the ground with another Officer on top of him, punching him in the face, violated the Fourth Amendment. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's claims against Defendant Officer Husnay based on the defense of qualified immunity.

**F. Plaintiff's state-law claims - excessive force, assault and battery**

In their memorandum of law in support of their motion to dismiss, Defendants assert that, because Plaintiff's state-law claims for excessive force, assault and battery "are analyzed under the same framework" as Plaintiff's Fourth Amendment excessive force claim, "for the same reasons supporting dismissal of the federal excessive force claim, Defendants submit that dismissal of Plaintiff's state law excessive force, assault and battery claims is also appropriate." *See* Dkt. No. 10-1, Defendants' Memorandum of Law, at 18.

Furthermore, Defendants argue that Defendant Officer Husnay is also entitled to qualified immunity with regard to Plaintiff's state-law claims "because the complaint fails to plausibly allege that any such acts were taken in bad faith or without a reasonable basis." *See id.* at 18.

For the same reasons that the Court denied Defendants' motion to dismiss Plaintiff's Fourth Amendment excessive force claim and denied Defendants' argument that Defendant Officer Husnay was entitled to qualified immunity with regard to that claim, the Court denies Defendants' motion to dismiss Plaintiff's state-law claims and Defendant Officer Husnay's defense of qualified immunity.

**G. Plaintiff's state-law claim for negligent hiring, retention, training and supervision claim**

Defendants argue that that the Court should dismiss Plaintiff's state-law claim for negligent hiring, training, supervision, discipline, staffing, and retention because Defendant Husnay was acting in his official capacity and, therefore, any claim would lie under *respondeat superior*, not negligent hiring, retention, supervision and training. *See* Dkt. No. 10-1, Defendants' Memorandum of Law, at 20 (citing *Hernandez v. Denny's Corp*, 177 A.D.3d 1372, 1375 (4th Dep't 2019)).

Plaintiff responds that, "even if [she] cannot ultimately receive a double recovery under both a theory of *respondeat superior* and a Negligence Claim, [she] can plead those claims in the alternative." *See* Dkt. No. 13, Plaintiff's Memorandum, at 15. Furthermore, Plaintiff argues that "[i]t would be premature to dismiss the Negligence Claim at this stage, before Plaintiff can take discovery to determine which theory of liability to present to a jury." *See id.* (citing *Pickering v. New York*, 816 N.Y.S.2d 566, 567 (2d Dep't 2006) (holding that plaintiffs are "entitled to plead incompatible theories of recovery in the alternative")). Alternatively, Plaintiff contends that her "allegation that Officer Husnay 'was unfit for his position and duties' sufficiently alleges that the City was negligent in nonetheless [sic] hiring him . . . [and] Plaintiff need not at this early stage allege any prior similar incidents with any more specificity, contrary to Defendants' contention." *See id.* (citing *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004) ("It is unlikely that a plaintiff would have information about the city's training [or hiring and retention] programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train [or its hiring and retention policies] caused the constitutional violation."); *Williams v. City of N.Y.*, 690 F. Supp. 2d 338, 344 (S.D.N.Y. 2010)

(Chin, J.) (applying post-*Iqbal*, *Amnesty*'s "less stringent pleading standard" where plaintiff is unlikely to have information about city policies prior to discovery)).

The Court agrees with Defendants that Plaintiff's Fifth Cause of Action for negligent hiring, training, supervision, discipline, staffing and retention against Defendant City of Utica is subject to dismissal because this claim is incompatible with Plaintiff's unambiguous factual assertion that "Defendant Officer Patrick Husnay at all times relevant hereto was employed by the [Utica Police Department], acting in the capacity of agent, servant, and employee of the City of Utica, and **within the scope of his employment**." *See* Complaint at ¶ 8 (emphasis added).

As the Court in *Bryant v. Monroe Cty.*, No. 19-CV-6474 CJS, 2022 WL 119184, *14 (W.D.N.Y. Jan. 12, 2022), explained, it had "previously described New York law concerning negligent hiring, training and supervision, as being that

> 'where the acts of employees are concerned, an employer . . . may be held directly liable for negligent hiring, retention, or supervision for acts committed outside that scope. . . . [However, because an employer is vicariously liable for torts committed by an employee within the scope of his employment,] the only time a claim for negligent retention, training or supervision makes sense is when an employee tortiously injures someone while acting outside the scope of his employment, and the injured party cannot hold the employer vicariously liable in *respondeat superior* for the employee's tort, but may be able to hold the employer liable for its own negligence in retaining, training or supervising the employee.'"

*Bryant*, 2022 WL 119184, at *14 (quoting *Ben v. United States*, 160 F. Supp. 3d 460, 476-77 (N.D.N.Y. 2016) (citations and internal quotations marks omitted) (Siragusa, J. as acting Judge of N.D.N.Y.); *accord, Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594 (CJS), 2018 WL 2100605, at *27 (W.D.N.Y. May 7, 2018) (quoting *Ben v. United States*).

The Court agrees and, therefore, grants Defendants' motion to dismiss Plaintiff's Fifth Cause of Action.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's complaint, *see* Dkt. No. 10, is **GRANTED** with regard to Plaintiff's Fifth Cause of Action and **DENIED** in all other respects; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Freedman for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: August 26, 2026
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge